UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARLON BROWN,

       Plaintiff,

v.                     Case No:  2:21-cv-545-JES-KCD

MAUREEN  RICEWICK,  MICHAELA
BEARD, ANIECE THERMIDOR, and
JENICE JACKSON,

       Defendants.

_____

## OPINION AND ORDER

    This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. #69), Plaintiff Marlon Brown's Response (Doc. #78) and Amended Response (Doc. #80), and Defendants' Reply (Doc. #79).  Brown also filed two sur-replies (Docs. #81 & #82), and a motion for leave to file a sur-reply (Doc. #83).  The Court grants Brown's motion for leave to file a sur-reply.

### Background

    Marlon Brown (Brown or plaintiff)—a prisoner of the Florida Department of Corrections ("FDOC")—filed this suit <u>pro</u> <u>se</u>, alleging Defendants were deliberately indifferent to his serious medical need.  Each Defendant works as a nurse at DeSoto Correctional Institution, where Brown is incarcerated.  The following facts are undisputed unless otherwise noted.[1]

_____

[1] In  some  instances,  Brown  ostensibly  disputes  Defendant's

Brown had a medical appointment on September 26, 2020, for an issue unrelated to this action. While getting ready for the appointment, Brown injured his hand on his locker. Brown states in an affidavit that he showed his swollen fingers to Jane Doe at the appointment, and that Doe told him to submit a sick call request. Brown claims he submitted sick call requests for treatment of his fingers on the following dates: September 28, October 9, October 20, November 23, and December 18, 2020. The custodian of inmate medical records at DeSoto C.I. testified that Brown's records include only the December 18 request. Defendants' unrefuted testimony establishes they were unaware of the first four sick call requests.

Brown did not receive medical treatment for his fingers until after the December 18, 2020 sick call request. Brown claims, however, that he showed his hand to each Defendant during medical appointments for unrelated issues on the following dates in 2020: Aniece Thermidor on October 1, Maureen Ricewick on October 19, Michaela Beard and Jenice Jackson on October 30, Ricewick again on November 2, and Jackson again on November 24. Brown claims that on each occasion the Defendant(s) refused to treat his fingers

---

factual statements but fails to cite to a particular part of the record to support those disputes. In accordance with Federal Rule of Civil Procedure 56(c)(1), the Court accepts as undisputed all facts established by Defendants' proper evidence and not disputed with a citation to the record.

during that appointment and instructed him to submit a sick call request. Defendants mostly deny seeing Brown on those dates, however Jackson and Ricewick acknowledge they saw Brown on October 30 and November 2, respectively, but they deny that Brown complained about his fingers.

Brown first received treatment for his hand on December 24, 2020. Ricewick evaluated Brown's fingers, noted they were swollen and deformed, and sent Brown's chart to a clinician to determine whether an x-ray is appropriate. The clinician ordered x-rays, which showed soft tissue swelling with acute dorsal plate fractures of the distal phalanxes of the fourth and fifth fingers. Thermidor ordered Motrin 600 mg for Brown for two weeks and requested an appointment to stabilize the fracture. Brown was scheduled for an appointment to splint his fingers on January 19, 2021, but he was a no-show. The appointment was rescheduled to January 26, 2021.

During the January 26, 2021 appointment, a clinician recommended a consultation with an orthopedic specialist. Brown refused. Brown's hand was x-rayed again three days later. A follow-up appointment was scheduled for February 19, 2021, but Brown did not show for the appointment. In a rescheduled appointment on March 1, 2021, a physician instructed Brown to continue the treatment plan and gave him a low-bunk pass. Brown did not show for a follow-up appointment on March 22, 2021, and a rescheduled appointment took place on March 29, 2021. Brown did

not thereafter request additional treatment for his fingers until August 17, 2021, about a month after he filed this suit. A clinician saw Brown on August 23, 2021, and prescribed Ibuprofen 600mg. Brown did not request care for his fingers for the next seven months.

On March 21, 2022, Brown submitted a sick call request regarding finger pain, and a nurse saw him on March 30, 2022. The nurse evaluated Brown and ordered a follow-up with a clinician. The clinician diagnosed Brown with mallet fingers and requested a consultation by an orthopedic specialist. The request was approved, and Brown was transferred to the Reception and Medical Center ("RMC") for the orthopedic consultation. On April 28, 2022, Brown submitted a written refusal of any treatment at RMC for his fingers. Nonetheless, Brown's fingers were x-rayed on May 6, 2022. The x-rays showed healed fractures with no new fractures or dislocations. Later that day, an orthopedic specialist evaluated Brown's fingers and discussed a possible surgical procedure, but Brown refused to consider surgery. Brown explained he feared for his life at RMC and wanted to be transferred out as soon as possible.

Brown next requested care for his fingers (and headaches) on September 4, 2022. A nurse practitioner saw Brown on September 14, 2022, and referred him to a clinician. The clinician prescribed a three-month supply of Ibuprofen 600mg the next day.

Brown states Dr. Thomas Winters evaluated him on November 26, 2022, gave him a Cortisone shot in his hand, and scheduled Brown for surgery.

### Legal Standard

A district court must grant summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and the movant party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant.  See Battle v. Bd. of Regents, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are

'implausible.'" <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 743 (11th Cir. 1996).

Brown filed his Complaint under 42 U.S.C. § 1983.  To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing <u>Arrington v. Cobb Cnty.</u>, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. <u>Marsh v. Butler Cty., Ala.</u>, 268 F.3d 1014, 1059 (11th Cir. 2001).

## Discussion

In <u>Estelle v. Gamble</u>, the Supreme Court established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."  429 U.S. 97, 104 (1976). But not every claim of inadequate medical treatment gives rise to an Eighth Amendment violation.  <u>Id.</u> at 105.  Negligence in diagnosis or treatment—even if it constitutes medical malpractice—does not necessarily violate the constitution. <u>Id.</u> at 106.

"To prevail on a claim of deliberate indifference to serious medical need in violation of the [Eighth] Amendment, a plaintiff must show: '(1) a serious medical need; (2) the defendant['s]

deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury.'" Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir.2010) (quoting Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009)).  In the Eleventh Circuit, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Shaw v. Allen, 701 F. App'x 891, 893 (11th Cir. 2017) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)).

Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (internal quotation marks omitted).  "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Id. But "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment does not support a claim of deliberate indifference." Wilson v. Smith, 567 F. App'x 676, 678 (11th Cir. 2014) (internal citation and quotation marks omitted).  "Moreover, matters of

medical judgment do not constitute deliberate indifference." Id. (citing Estelle, 429 U.S. at 107).

Defendants challenge several elements of Brown's deliberate-indifference claims.  They argue that: (1) each Defendant provided constitutionally adequate care during each encounter with Brown; (2) Defendants were unaware of Brown's hand injury before December 18, 2020; (3) directing Brown to submit a sick call request regarding his fingers was a reasonable response to Brown's complaints; and (4) Brown presented no expert testimony to establish causation.

Defendants' first three arguments hinge on whether Brown notified each Defendant of his hand injury, how each Defendant responded, and the reasonableness of those responses.  These issues clearly involve factual disputes.  Defendants satisfied their initial burden by demonstrating through affidavit and medical records that Brown did not notify any of them of his broken fingers before December 18, 2021.  The burden shifted to Brown, and he carried it by testifying (via affidavit) that he showed his swollen and deformed fingers to each Defendant before December 18, 2021, and each declined to provide any treatment.

But Brown's claims do not survive Defendants' fourth challenge.  Defendants assert that Brown failed to produce competent evidence that a delay in treatment attributable to Defendants caused Brown harm.  The delay potentially attributable

to each Defendant varies.  The longest alleged period of delay began when Brown claims he showed Doe his fingers on September 28, 2020, and ended on December 24, 2020, when Ricewick referred Brown to a provider for x-rays.  While there were subsequent delays in Brown's treatment, none were attributable to any Defendant.  And while Brown is not entirely satisfied with the care he continues to receive, there is no evidence suggesting any Defendant was deliberately indifferent to his fingers after December 24, 2020.

Thus, Brown must at least show that the approximately three-month delay in treatment from September 28, 2020, to December 24, 2020, worsened his hand injury.  "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill v. Dekalb Reg. Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002).  Brown blames his mallet-finger diagnosis on a delay in treatment, but he has provided no medical evidence to verify that claim.

The closest Brown comes to establishing causation is his account of the follow-up appointment for his x-ray results.  Nurse practitioner N. Wishon recommended referral to an orthopedic specialist, and Brown refused.  (Doc. #69-1 at 25).  Brown explained why in his affidavit: "51. I was also informed by Ms. C.

- 9 -

Cannon LPN and Ms. N. Wishon APRN that the damage to my hand was already done because I had gone to [sic] long without treatment and the healing process had already started." (Doc. #78-3 at 5).

That is not enough to defeat summary judgment. Courts generally must disregard inadmissible hearsay when considering summary judgment. Fed. R. Civ. P. 56(c)(4); see also Fed. R. Evid. 801(c). While "a hearsay statement can be considered at summary judgment if it can be reduced to admissible evidence at trial," Brown does not argue he could present the alleged statement in an admissible form. Carrizosa v. Chiquita Brands Int'l, 47 F. 4th 1278, 1303 (11th Cir. 2022).

The Eleventh Circuit Court of Appeals considered similar facts in Hines v. Parker, 725 F. App'x 801, 807 (11th Cir. 2018). It found that an alleged hearsay statement from a treating physician did not satisfy the need for verifying medical evidence: "Hines averred that Dr. Sedaros said Hines would not 'use his arm the same again' because of the delay, but the district court correctly disregarded the statement as inadmissible hearsay." And even assuming Cannon or Wishon would testify that "the damage to [Brown's] hand was already done[,]" that statement is too vague to establish the effect of the three-month delay in treatment. The medical records refute any implication that Wishon considered Brown's injury untreatable because she recommended referral to a specialist, which Brown refused.

No other evidence in the record suggests the initial three-month delay in treatment worsened Brown's condition.  And even assuming Brown's injury worsened over time, he cannot distinguish damage caused by the initial three-month delay from damage caused by the three-year delay of orthopedic care resulting from his repeated refusals to see a specialist.  Because Brown cannot produce evidence to satisfy the causation element of his claims, a reasonable jury could not return a verdict in his favor. Defendants are entitled to summary judgment.

Accordingly, it is hereby

**ORDERED:**

Defendants' Motion for Summary Judgment (Doc. 69) is **GRANTED.** Judgment will be entered in favor of defendants Maureen Ricewick, Michaela Beard, Aniece Thermidor, and Jenice Jackson and Marlon Brown shall take nothing.  The Clerk is **DIRECTED** to terminate all pending motions and deadlines, enter judgment accordingly for Defendants and against Plaintiff, and close this case.

**DONE and ORDERED** at Fort Myers, Florida, this ___19th___ day of July 2023.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:
Counsel of Record

- 11 -